C. J. RUDOLPH, Appellee, v. MARY T. CLAY, Appellant.

MORTGAGES: Foreclosure—Construction of Decree. An obscure and ambiguous decree must be construed in the light of the pleadings before the decreeing court, and the facts proven, and on the pre-

sumption that the court must have intended to provide *substantial* and not *colorable* relief. Especially is this true when the construction thus arrived at makes all lien holders whole, and gives the owner of the land involved a chance to redeem.

PRINCIPLE APPLIED: First and second mortgages were separately, and in that order, foreclosed. Separate sales were had, and the property was sold to the second mortgagee. Later, and at a time when the right of the owner of the land to redeem was dead as to the *first* foreclosure sale, but alive as to the second foreclosure sale, the certificate holder obtained a supplemental decree which, after rectifying certain defects in both foreclosures, granted the following rights of redemption:

1. To certain lien holders, nine months from ''said original decree.''

2. To the owner of the land, one year from the ''original sale.''

Under said supplemental decree, some lien holders had a right to redeem from the first foreclosure sale, but not from the second; while other lien holders had a right to redeem from the second foreclosure sale, but not from the first. One lien holder had the right to redeem from both foreclosure sales. The said supplemental decree cured no defect in the *first* foreclosure, as regards the owner of the land.

*Held*, it was the evident intention of the court, in view of the pleadings and facts found, to grant to the owner of the land three months in which to redeem, after all lien holders had exhausted their rights, and therefore the term ''original sale,'' as employed in the supplemental decree, meant *both* sales,—the sales under *both* foreclosures.

*Appeal from Black Hawk District Court.*—CHARLES W. MULLAN, Judge.

DECEMBER 31, 1920.

OPINION ON REHEARING, NOVEMBER 21, 1922.

SUIT in equity, to redeem from a sheriff's sale of real estate. There was a decree for the plaintiff, and the defendant appeals.—*Affirmed.*

*J. B. Newman* and *Pickett, Swisher & Farwell,* for appellant.

*Edwards, Longley, Ransier & Harris,* for appellee.

EVANS, J.—The fighting question in this case is the proper construction of a paragraph in a prior decree. Such paragraph was in part as follows:

"* * * be foreclosed and forever barred, and that plaintiff's title thereto become and remain absolute and free from all liens and judgments which defendants, or any of them, have or had against said land, and that the same are junior and inferior to plaintiff's title thereto, except that defendant Elizabeth Clarke shall have the period of one year from this day in which to redeem from the *original sale hereunder*, and that defendants Theodore Rudebeck, Mary Rudebeck, Burt I. Weld, Lemuel Shipman, and Citizens Savings Bank shall have a period of nine months from this date, in which to redeem from said original decree."

At the time this decree was entered, the court had under consideration two previous foreclosure decrees and two previous execution sales. The dispute concentrates upon the question as to which of these two previous sales was intended to be designated herein, by the words "original sale." The plaintiff appellee contends that the *first* sale in point of time was intended to be designated; and the defendant appellant contends that the second sale in point of time was intended to be designated.

The plaintiff is grantee of Elizabeth Clarke, and seeks to redeem, as the owner of the fee.

Prior to August, 1915, the real estate involved herein was subject to a first mortgage of $7,500 in favor of Eighmey, and subject to a second mortgage of $3,000 in favor of Mary T. Clay, defendant herein. Theodore and Mary Rudebeck were mortgagors in each case. Subsequent to the execution of the mortgages, the Rudebecks conveyed to Weld, and Weld conveyed to James H. Clarke, the purchaser in each case assuming the mortgages. Clarke was the fee owner on August 27, 1915, on which date a foreclosure was begun on the Eighmey mortgage. The defendants upon whom service was had or appearance made in such suit were James H. Clarke and wife, Elizabeth Clarke, Mary T. Clay, and two junior lien holders, the German Savings Bank of Manning and the Citizens Savings Bank of Cedar Falls. A decree was entered in due form against all of them. The case

was continued as to other defendants not served. These were the Rudebecks and Weld and Bond and Robertson. Robertson is conceded to have had no interest. The interest of Bond, if any, is in no manner disclosed in the record. On December 11, 1915, the real estate was sold at execution sale, and was purchased by Mary T. Clay, the mortgagee in the second mortgage, for the full amount of the prior incumbrance. On February 7, 1916, Mary T. Clay brought a foreclosure suit upon her own mortgage. She named as defendants, Theodore and Mary Rudebeck, James H. Clarke, E. L. Gunberg, W. E. Duncanson, German Savings Bank of Manning, and the Citizens Savings Bank of Cedar Falls. She made service upon the Rudebecks, upon Clarke, and upon the German Savings Bank. She did not serve Gunberg, Duncanson, or the Citizens Savings Bank. Subsequent to August, 1915, James H. Clarke had conveyed to Gunberg, who conveyed to Duncanson, who on March 17, 1916, conveyed to Elizabeth Clarke. This suit went to decree on March 15, 1916, against the defendants served. On April 22, 1916, the real estate was again sold under execution sale, pursuant to this decree, and was bid in again by Mary T. Clay, for the full amount of her incumbrance. This bid terminated the interest of Gunberg and Duncanson as parties defendant. The only substantial defect appearing at this point on the face of the record in the Clay decree of foreclosure was that no service had been had on the Citizens Savings Bank, as one of the junior lien holders. Other defects appear to have been discovered, or at least suspected, later. An attempt was made by Mary T. Clay to cure these by a third suit. On December 8, 1916, she brought a third suit in equity, which apparently sought to obtain a decree supplemental both to the Eighmey foreclosure and to the Clay foreclosure. In that suit, she named as defendants, Theodore and Mary Rudebeck, Burt I. Weld, Lemuel Shipman, Elizabeth Clarke, Robert J. Robertson, and Citizens Savings Bank. Elizabeth Clarke had been foreclosed in the Eighmey foreclosure, but she had not been foreclosed in the Clay foreclosure. The same thing was true as to the Citizens Savings Bank. Lemuel Shipman had not been foreclosed in either suit. What his interest was is not disclosed by any allegation in the pleadings, nor by any recital in the decree. He was duly served,

but did not appear. He was awarded, under the decree, a right of redemption for a period of nine months. On the face of the record, the failure to implead and serve him as a defendant was a defect in both foreclosure proceedings. This third suit went to decree on January 17, 1917. It awarded to plaintiff, Mary T. Clay, the relief prayed, except that it awarded to the defendant lien holders a period of nine months within which to redeem from "said original decree;" and except that it allowed to Elizabeth Clarke, presumptively as owner, the period of one year, within which she might redeem from the "original sale." The question is, What was intended in the third decree by the terms "original decree" and "original sale?" The appellee contends that by "original sale" was necessarily meant the *first* sale. This would be true chronologically, but not necessarily true in any other sense. We would be unwilling to put our construction of the decree upon a chronological basis. In view of the fact that Mrs. Clay stood in a dual relation in her supplemental foreclosure proceeding, as being the beneficiary of the two decrees and the two execution sales, the language actually adopted in the decree is very obscure and ambiguous. We can construe it intelligently only by putting ourselves in the place of the trial judge who rendered the decree, and by confronting ourselves, as nearly as may be, with the same pleadings that confronted him. The defendants in such third suit who were awarded a period of nine months to redeem were Theodore and Mary Rudebeck, Burt I. Weld, Lemuel Shipman, and Citizens Savings Bank. The defendant Elizabeth Clarke was allowed the period of one year. The two Rudebecks and Weld had been served with notice in the Clay foreclosure, and had been fully foreclosed by the decree therein. They had not been served with notice in the Eighmey foreclosure, and were not foreclosed by that decree. The defendants Citizens Savings Bank of Cedar Falls and Elizabeth Clarke had both been served in the Eighmey foreclosure, and were foreclosed by that decree, but had not been served in the Clay foreclosure, and were not foreclosed by the decree therein. Lemuel Shipman had not been served in either foreclosure suit, and had not been foreclosed by either decree. The manifest purpose of the suit, as disclosed in the petition, was to obtain supplemental relief against junior lien

holders who had failed to be served with notice in one or the other of the original foreclosures. As noted, the failures or defects of service in the two foreclosures were not identical. The plaintiff described herself as the certificate holder under each foreclosure sale, and averred that the lien and interest of the defendants named were all junior and inferior both to the Eighmey mortgage and to her own mortgage; and her prayer for relief was, in legal effect, a prayer for a supplemental decree of foreclosure under both mortgages, foreclosing as to each mortgage the rights of these junior lien holders, and forever barring them from any right of redemption after the expiration of the statutory period. The decree in terms found the facts with the plaintiff, and awarded her the relief prayed, saving the exception in favor of the defendants which has been already quoted.

What was the effect of this decree upon the lien holder defendants? Manifestly, it cured the omissions of the original decrees respectively. The Rudebecks and Weld had been fully foreclosed by the Clay decree, but had not been foreclosed by the Eighmey decree. As to these defendants, the omission cured was in the Eighmey decree. As to them, therefore, the "original decree" was the Eighmey decree. As to the defendant lien holder Citizens Savings Bank, it had been served and fully foreclosed by the Eighmey decree. It had not been foreclosed by the Clay decree. The omission as to it, therefore, which was cured by the supplemental decree was an omission in the Clay decree. As to it, the "original decree" was the Clay decree. As to the lien holder defendant Lemuel Shipman, he had not been foreclosed by either decree. The omission cured by the supplemental decree as to him, therefore, was in both decrees, and the supplemental decree was curative as to both of them. As to this defendant, therefore, the "original decree" meant both foreclosure decrees. As to the defendant Elizabeth Clarke, she was served and foreclosed in the Eighmey decree, but was not served or made a party in the Clay foreclosure, and was, therefore, not foreclosed by that decree. The effect of the supplemental decree, therefore, was to cure as to her an omission in the Clay foreclosure. Were it not for other features of the

record to be noted, it would have to be said, therefore, that the
"original decree" as to her was the Clay decree.

But by the pleadings in the supplemental suit, she does
not stand on a parity with the other defendants. On the face
of the record, she was not a necessary party to the Clay fore-
closure, in that the title to the land at the time the foreclosure
was begun was in Duncanson, who conveyed to Elizabeth Clarke
on March 17, 1916. Mrs. Clarke appeared and pleaded in the
supplemental proceeding. She pleaded, in effect, that, though
she had no title of record at the time of the beginning of the
Clay foreclosure, she was in fact in possession of the land as
owner, and had been so in possession for a long time previous.
That the court found this fact in her favor is manifest from the
provision made for her in the decree. By way of cross-bill, she
further pleaded, in effect, that her statutory right of redemp-
tion had been impaired by the failure of the foreclosing plain-
tiffs in each case to serve and foreclose against junior lien hold-
ers. The theory suggested by her pleading and prayer was that
she was entitled, under the statute, to three months after junior
lien holders had exhausted their full rights of redemption, in
order to utilize her right of redemption either by its exercise
or by sale thereof. It is manifest, indeed, that while there were
outstanding inferior lien holders whose right of redemption had
not been foreclosed, the owner of the fee could not adequately
utilize the statutory benefits provided for him. Whether Mrs.
Clarke was entitled to any equitable relief on this account is a
question upon which we intimate no opinion. What is evident
from the record before us is that the trial court in the supple-
mental decree did aim to extend just such relief. Whether the
decree was erroneous in that regard is beside the mark. It is
no less valid on that account. An intelligent construction cannot
be given to the decree upon any other theory. The court gave
to the lien-holding defendants nine months, and gave to the
defendant owner one year. This would give her three months
to utilize her right of redemption after all lien holders had ex-
hausted their rights of redemption. If this be a correct inter-
pretation of the purpose of the decree, then it necessarily oper-
ated upon both of the original decrees. Each decree was made

subject to redemption as to some of the defendants. If she was entitled to such relief as to either decree, she was entitled to it as to both. Some of the lien holders were entitled to redeem from one sale, and other defendants from the other. One defendant was entitled to redeem from both. If the defendant owner was entitled to the last three months of the redemption period after all junior lien holders had been cut off, as the court evidently held, there was no way by which that right could be differentiated, as between the two cases. As to her, therefore, the "original sale" meant both sales. If it be conceded that the court granted her more than she was entitled to, the remedy was by appeal from that decree. Any other construction of the decree would reduce it to a nullity. We must assume that the court by the decree intended to extend substantial, and not colorable, relief. If the relief extended to her in the decree had reference only to the Clay foreclosure sale, it was entirely worthless. The full time of redemption had already expired under the Eighmey sale. Indeed, the redemption year under the Clay sale had not expired at the time the decree was entered. Such year would expire on April 22, 1917, whereas the decree was entered in January preceding. But such right of redemption was literally naked, and could extend to the owner no relief whatever, because of the expiration of the year of redemption under the Eighmey sale. To extend the time of an existing right so barren would be to trifle with the solemnity of a judicial decree. We will not presume that such was the purpose of the court. In reaching this conclusion, we are not unmindful of the fact that the decree from which this appeal was taken was entered by the same judge who had entered the supplemental decree. We do not deem this fact controlling, because the decree must speak in and of itself. But in view of its ambiguity and the complication of the data upon which it was predicated, the fact that both decrees were entered by the same judge is worthy of consideration.

It is true that the trial judge first adopted the construction of the supplemental decree contended for by the appellant defendant, and rendered decision accordingly, and that it was only after reconsideration and further argument that he reached

the contrary conclusion, whereby he set aside his first decision and entered judgment according to the construction contended for by appellee. The mental operations of the trial judge are not unlike the oscillations of judgment which the members of this court have suffered in the consideration of the case. We have seldom had to consider a case more difficult of satisfactory solution.

There is manifest, also, in the relief granted by the supplemental decree a certain morality which does not shock the conscience of the court, even though, on an appeal, it might have been found to be legally erroneous. Full relief could have been granted in one foreclosure suit to all the lien-holding creditors of the landowner. There was no real occasion for the Clay foreclosure. Mrs. Clay could have fully protected herself under the Eighmey foreclosure and sale, either by redemption or by bidding. For the same reason, there was little occasion, also, for the third foreclosure or supplemental proceeding. When the Eighmey decree was entered, it provided for a continuance of the case as to the unserved defendants. All that was necessary at any time whatever was to serve the remaining defendants in the Eighmey case, and take a supplemental decree therein. The multiplicity of suits and sales served little purpose, other than to churn the water and to obscure and becloud the title of the owner and the relative rights of junior lien holders, so that the right of the landowner to utilize the statutory method of redemption provided in his behalf was greatly impaired, in that he was able neither to use it nor to sell it. The result aimed at in the supplemental decree was not unconscionable. The same is true of the decree appealed from. It awarded to the mortgagee creditors, as represented now by the certificate holder under each sale, full recompense, with interest, and awarded to the landowner a fighting chance to save his land.

Some question has been made in argument as to whether the plaintiff was under any obligation to make redemption from both sales, or from the Eighmey sale alone. The plaintiff is in court with a tender of redemption from both sales. In affirming the case here, the plaintiff will be held to his tender, and will be required to redeem from both sales by payment of principal

and interest to the date of such redemption. Any question of accounting for rents and profits of possession and for taxes will be reserved for the consideration of the trial court. The decree entered below will otherwise be affirmed.—*Affirmed.*

PRESTON, FAVILLE, and DE GRAFF, JJ., concur.

STEVENS, C. J.—I adhere to the views expressed by me in the former opinion of the court. See 180 N. W. 667.